# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **CASELAS, LLC,**<br><br>Plaintiff<br><br>v.<br><br>**ELECTRONIC MERCHANT SYSTEMS, LLC,**<br><br>Defendant | **Case No. 6:20-cv-** 1130<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Caselas, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Electronic Merchant Systems LLC ("EMS" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.      Caselas, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.      Upon information and belief, Defendant is a foreign limited liability company organized and existing under the laws of the State of Ohio, with a principal place of business located at 250 West Huron Road, Suite 400, Cleveland, Ohio 44113. Defendant may be served through its registered agent in the State of Texas at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. On information and belief, EMS sells, offers to sell, and otherwise provides payment processing and/or merchant account services throughout the State of Texas, including in this

judicial District, and introduces payment processing and/or merchant account services via its infringing systems into the stream of commerce knowing and intending that they would be extensively used in the State of Texas and in this judicial District. On information and belief, EMS specifically targets customers in the State of Texas and in this judicial District.

## **JURISDICTION AND VENUE**

3.  This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

4.  This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Texas. Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages and providing payment processing and/or merchant account services; and further including maintaining physical facilities) its services in the State of Texas and in this District. Defendant has purposefully and voluntarily made its business services, including the infringing systems, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District. On information and belief, EMS is a provider of financial services throughout the United States, and is a registered Visa Service Provider (or ISO), and/or is a registered MasterCard Service Provider (or MSP). *See, e.g.,* https://www.visa.com/splisting/searchGrsp.do (Visa Registered Service Providers List); https://www.mastercard.us/content/mccom/en-us/merchants/safety-security/security-recommendations/service-providers-need-to-know.html/ (MasterCard Registered Service Providers List).

5.  On information and belief, Defendant maintains physical brick-and-mortar business locations in the State of Texas and within this District, retains employees specifically in this District for the

purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District.



*See https://www.emscorporate.com/.*



*See [https://www.emscorporate.com/san-antonio-tx-merchant-services](https://www.emscorporate.com/san-antonio-tx-merchant-services).*



*See: https://www.google.com/search?q=electronic+merchant+services+san+antonio
&rlz=1C1CHBF_enUS841US841&oq=electronic+merchant+services+san+antonio&aqs=chro
me..69i57j33i160.6014j0j15&sourceid=chrome&ie=UTF-8*

6.      On information and belief, EMS has a substantial presence in the State of Texas and within this

District, as exemplified by the LinkedIn Profile Page for EMS, which indicates there are 10

employees of EMS residing in the San Antonio area, including individuals holding the titles of

Account Executive and General Manager.



*See* https://www.linkedin.com/company/emscorporate/people/?keywords=texas.

7.     On information and belief, EMS provides financial services, including but not limited to payment processing and/or merchant account services, to businesses located in the State of Texas and within this District.  On information and belief, EMS further provides specific hardware (such as, for example, credit card terminals) to its customers in the State of Texas and within this District, and provides technical support for such hardware.  On information and belief, EMS further exercises ownership control over such hardware via contractual licensing and/or lease agreements with its customers.

8.     Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established business presence in this District.

## PATENTS-IN-SUIT

9.     Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 7,529,698 ("the '698 Patent"); 7,661,585 ("the '585 Patent"); 9,117,206 ("the '206 Patent"); 9,117,230 ("the '230

Patent"); and 9,715,691 ("the '691 Patent") (hereinafter collectively referred to as "the Caselas Patents").

10.     By operation of law, the Caselas Patents were originally issued and exclusively vested to the sole named inventor, Raymond Anthony Joao, as of the date of their respective issuances. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). Mr. Joao, in a written instrument dated March 6, 2012, and filed with the United States Patent and Trademark Office on May 7, 2015 at Reel 035604 and Frames 0126-0132, assigned all rights, title, and interest in the Caselas Patents to GTJ Ventures, LLC. Thereafter, in a written instrument dated October 23, 2020, GTJ Ventures assigned all rights, title, and interest in the Caselas Patents to the Plaintiff, Caselas LLC. As such, Plaintiff Caselas LLC has sole and exclusive standing to assert the Caselas Patents and to bring these causes of action.

11.     The Caselas Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

12.     The inventions described and claimed in the Caselas Patents were invented individually and independently by Raymond Anthony Joao.

13.     The Caselas Patents each include numerous claims defining distinct inventions.

14.     The priority date of each of the Caselas Patents is at least as early as January 16, 2001. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

15.     For example, and as evidence of the stated non-routine aspects of the inventions, during prosecution of the '206 Patent, Primary Examiner Andrew Joseph Rudy specifically and expressly considered whether the claims of the '206 Patent were eligible under 35 USC §101 in view of the

United States Supreme Court's decision in *Alice*. Examiner Rudy affirmatively and expressly found that the claims are in fact patent eligible under 35 USC §101 because: (i) all claims are directed to patent-eligible subject matter; (ii) none of the claims are directed to an abstract idea; (iii) each of the claims contains an inventive concept; and (iv) there is no preemption of any abstract idea or the field of the abstract idea (if any). *See* Corrected Notice of Allowability, dated July 9, 2015.

16.     As further evidence of the stated non-routine aspects of the inventions, during prosecution of the '230 Patent, Primary Examiner Andrew Joseph Rudy specifically and expressly considered whether the claims of the '230 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*. Examiner Rudy affirmatively and expressly found that the claims are in fact patent eligible under 35 USC §101 because: (i) all claims are directed to patent-eligible subject matter; (ii) none of the claims are directed to an abstract idea; (iii) each of the claims contains an inventive concept; and (iv) there is no preemption of any abstract idea or the field of the abstract idea (if any). *See* Corrected Notice of Allowability, dated July 9, 2015.

17.     As further evidence of the stated non-routine aspects of the inventions, during prosecution of the '691 Patent, Primary Examiner Andrew Joseph Rudy specifically and expressly considered whether the claims of the '691 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*. Examiner Rudy affirmatively and expressly found that the claims are in fact patent eligible under 35 USC §101 because: (i) all claims are directed to patent-eligible subject matter; (ii) none of the claims are directed to an abstract idea; (iii) each of the claims contains an inventive concept; and (iv) there is no preemption of any abstract idea or the field of the abstract idea (if any). *See* Notice of Allowability, dated April 10, 2017.

18.    Plaintiff alleges infringement on the part of Defendant of the '698 Patent, the '585 Patent, the '206 Patent, the '230 Patent, and the '691 Patent (collectively as the "Asserted Patents").

19.    The '698 Patent relates generally to methods which include receiving information regarding a transaction involving an account, wherein the information regarding the transaction is received by a receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction, processing the information regarding the transaction with a processing device using information regarding the account, generating a report or a message in response to the processing of the information regarding the transaction, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account, and transmitting the information report to a communication device associated with a merchant, vendor, or provider, of a good, product, or service. *See* Abstract, '698 Patent.

20.    The '585 Patent relates generally to apparatuses and methods, which include receiving information regarding a transaction involving an individual and involving an account, wherein the information regarding the transaction is received by a receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction, processing the information regarding the transaction with a processing device, generating a report or a message in response to the processing of the information regarding the transaction, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the individual, and transmitting the report or the message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service. *See* Abstract, '585 Patent.

21.    The '206 Patent relates generally to apparatuses and methods, which include receiving information regarding an individual and information involving an account involved in a transaction, wherein the information regarding the individual is received by a receiver prior to a processing, a

completion, a consummation, or a cancellation, of the transaction, processing the information regarding the individual with a processing device, generating a report or a message in response to the processing of the information regarding the individual, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the individual, and transmitting the report or the message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service. *See* Abstract, '206 Patent.

22.     The '230 Patent relates generally to apparatuses and methods, which include receiving information regarding a transaction involving an individual and involving an account, wherein the information regarding the transaction is received by a receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction, processing the information regarding the transaction with a processing device, generating a report or a message in response to the processing of the information regarding the transaction, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the individual, and transmitting the report or the message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service. *See* Abstract, '230 Patent.

23.     The '691 Patent relates generally to apparatuses and methods, which include processing, with a processing device, information regarding an account involved in a transaction involving an individual, wherein the information regarding the account is received by a receiver, and further wherein the information regarding the account is processed prior to a processing, a completion, a consummation, or a cancellation, of the transaction, generating, with the processing device, a report or a message in response to the processing of the information regarding the account, wherein the report or the message contains information regarding a charge-back regarding a previous transaction involving the account, and transmitting, with or from a transmitter, the report or the

message to a communication device associated with a merchant, vendor, or provider, of a good, product, or service. *See* Abstract, '691 Patent.

24. As noted, the claims of the Asserted Patents have priority to at least January 16, 2001. At that time, the use of chargeback data as an integral data point in payment processing was still many years away. For example, Visa did not recognize and implement chargeback data into individual real-time transaction risk assessments until 2010. Similarly, MasterCard did not recognize and implement chargeback data into individual real-time transaction risk assessments until 2015. The same is true of payment technology companies such as Intuit and Square, which did not implement chargeback data into individual real-time transaction risk assessments until 2009 and 2015, respectively. As such, the technological solutions of the Caselas Patents were not well-understood, routine, or conventional as of January 2001.

25. As noted, the claims of the Asserted Patents have priority to at least January 16, 2001. Only years later would credit card issuers and payment processors begin to recognize the importance of chargebacks in the real-time processing of individual transactions. For example, the Payment Card Industry Data Security Standard ("PCI DSS") was not developed until December 2004. Further, the Secure POS Vendor Alliance ("SPVA") was not created until 2009 by VeriFone, Hypercom, and Ingenico. As such, the technological solutions of the Caselas Patents were not well-understood, routine, or conventional as of January 2001.

26. The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas. Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, were not conventional or routine at the time of the invention.

27. Further, the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

28. Consequently, the claims of the Asserted Patents recite apparatuses and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers. The claims of the Asserted Patents provide for more secure transaction processing, reduced fraud, reduced chargeback exposure to merchants, reduced costs to merchants (including as a result of lower chargeback ratios), reduced opportunity-cost losses to merchants, reduced costs of goods for consumers, and more secure transactions involving merchants and non-present consumers (such as, for example, online merchants). *See, e.g.,* '698 Patent at 1:33-2:38.

29. The claims of the Asserted Patents overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas. For example, as of the date of invention, "[m]erchants, vendors, or providers, of goods, products, or services, lo[se] millions of dollars each year as the result of non-payment of their receivables. Non-payment of receivables can result from credit card fraud, charge card fraud, debit card fraud, cyber-shoplifting, charge-backs, bank fraud, check fraud, the stopping of issued checks, checks returned for insufficient funds, and other causes or activities." '698 Patent at 1:33-39. The inventions as claimed overcome these deficiencies in the state of the art, and provide substantial cost savings and protections to all parties. As explained, as of the date of invention, "many merchants, vendors, or providers, are having their charges or receivables challenged, disputed, and/or denied, by dishonest individuals. This has resulted in charge-backs to the merchants, vendors, or providers, which entail having a bank or issuer associated with the account holder's or the account owner's account impose a return of funds. Other fees may also be imposed on the respective merchants, vendors, or providers." *Id.* at 1:62-

2:2. Likewise, as of the date of invention, "the respective merchants, vendors, or providers, can lose in a number of ways. They lose the funds received, they may not have the goods, products, or services, returned, they may be charged charge-back fees, and/or they can experience opportunity costs (*i.e.* expended employee time and/or company resources) in dealing with the disputed charges." *Id.* at 2:3-9. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the likelihood of chargeback, and the resulting costs and business disruptions to the merchant, are reduced. *Id.* at 2:35-39.

30. The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by "prevent[ing] and/or … reduc[ing] the incidence of any one or more of credit card fraud, credit account fraud, charge card fraud, charge account fraud, debit card fraud, debit account fraud, check fraud, checking account fraud, and/or cyber-shoplifting." As explained, the inventions as claimed overcome these deficiencies by "provid[ing] an apparatus and method for providing transaction history information, account history information, and/or charge-back information which can be utilized by a merchant, vendor, or other entity, in processing, and/or in assessing the processing of, a transaction." *Id.* at 2:39-48. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the incidents of fraud are reduced by the use of chargeback information in the processing of transactions.

31. The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by providing methods and apparatuses for processing entities to assess "whether or not it should fulfill an order relating to a transaction." As explained, the inventions as claimed overcome prior deficiencies in this regard by "process[ing] information regarding past denials of liability or responsibility regarding a transaction, past charge-back activity involving any one or more of a credit card, a credit account, a charge card, a charge account, a debit card, a debit account,

or a checking account." *Id.* at 2:61-3:3. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the incidents of fulfilling fraudulent or potential chargeback transactions are reduced on the front end, based on past chargeback activity (among others).

32.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by providing methods and apparatuses for use in all types of transactions, including "face-to-face transactions, non-face-to-face transactions, telephone transactions, on-line transactions, mail order transactions, and/or in any other non-cash transactions." *Id.* at 3:4-12. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day by providing a solution for non-cash and non-face-to-face transactions (including online transactions), among others. Among other advancements, the inventions as claimed provided nonconventional solutions to online transaction processing, which was deficient at the time.

33.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by providing methods and apparatuses useful by "a merchant, vendor, or other entity, in order to assess an individual's or an entity's past transaction history, account history, or charge-back history, in order to determine if the individual or entity has had a history of, or could be a risk in, denying being party to a transaction involving a credit card, a credit account, a charge card, a charge account, a debit card, a debit account, or a checking account, disputing a transaction a involving credit card, a credit account, a charge card, a charge account, a debit card, a debit account, passing or attempting to pass a bad check, stopping payment of an issued check, and/or in other ways attempting to defraud or otherwise obtain goods, products, or services, without paying for same, shopping same, and/or cyber-shoplifting same." *Id.* at 3:13-35. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day

by providing a solution for payment processors as a safeguard against future or potential chargebacks. Among other advancements, the inventions as claimed provided nonconventional solutions, which included a consideration of historical chargebacks or fraud by the individual associated with the transaction. The inventive solution further provides for fraud and chargeback assessment "during a transaction authorization process," which was unconventional at the time. *Id.* at 3:35-42.

34.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by providing for an unconventional "central processing computer," which performs a number of specific inventive aspects of the solution. As such, the claimed "central processing computer" does not merely comprise standard conventional hardware and software; rather, as claimed, it advances the functionality of the computer as a useful tool in the electronic processing of payments and the prevention of fraud.

35.     The inventions as claimed provide multiple inventive technical solutions to the technological problems of the time associated with chargeback and electronic payment fraud. Among those technological solutions are: (i) providing transaction history information, account history information, and/or charge-back information, which can be utilized by a merchant, vendor, or other entity, in processing, and/or in assessing the processing of, a transaction; (ii) providing transaction history information, account history information, and/or charge-back information, which can be utilized in order to prevent and/or in order to reduce the incidence of any one or more of credit card fraud, credit account fraud, charge card fraud, charge account fraud, debit card fraud, debit account fraud, check fraud, checking account fraud, or cyber-shoplifting; (iii) providing transaction history information, account history information, and/or charge-back information, which can be utilized in order to process information regarding fraudulent use of any one or more

of credit cards, credit accounts, charge cards, charge accounts, debit cards, debit accounts, electronic money accounts, automated teller machines, checks, or checking accounts; (iv) providing transaction history information, account history information, and/or charge-back information, which can be utilized in order to process information regarding checks returned due to insufficient funds and checks for which stop payment orders have been made; (v) providing transaction history information, account history information, and/or charge-back information which can be utilized to process information regarding disputes and/or denial of payment assertions made in conjunction with any one or more of credit cards, credit accounts, charge cards, charge accounts, debit cards, debit accounts, electronic money accounts, checks, or checking accounts; (vi) providing transaction history information, account history information, and/or charge-back information, which can be utilized in order to process information regarding past denials of liability or responsibility regarding a transaction; (vii) providing transaction history information, account history information, and/or charge-back information, which can be utilized in order to perform risk management assessments regarding a transaction; (viii) providing transaction history information, account history information, and/or charge-back information, which can be utilized in face-to-face transactions, non-face-to-face transactions, telephone transactions, on-line transactions, mail order transactions, or in any other transactions; (ix) providing transaction history information, account history information, and/or charge-back information, which can provide information at any time during, prior to, and/or subsequent to, a transaction; (x) providing transaction history information, account history information, and/or charge-back information, which can be utilized to allow a merchant, vendor, or provider, of goods, products, and/or services, to process information regarding a counterpart or counterparty to a transaction in order to determine if the counterpart or counterparty could be a risk, could be a credit

risk, or might not fulfill payment obligations relating to a transaction; (xi) providing transaction history information, account history information, and/or charge-back information, which can be utilized during a transaction, during a transaction authorization process, subsequent to a transaction, subsequent to a transaction authorization process, prior to an order fulfillment process, or during an order fulfillment process; (xi) providing transaction history information, account history information, and/or charge-back information, which can be utilized on, over, or on conjunction with, any communication network or system; (xii) providing transaction history information, account history information, and/or charge-back information, which can be utilized on, over, or in conjunction with, any one or more of a telephone network, a telecommunication network, a digital communication network, a satellite communication network, a wireless communication network, a personal communication services network, a broadband communication network, or a bluetooth communication network; (xiii) providing transaction history information, account history information, and/or charge-back information, which can be utilized on, over, or in conjunction with the Internet and/or the World Wide Web; (xiv) providing transaction history information, account history information, and/or charge-back information, which can be utilized on, over, or in conjunction with a wireless communication network; (xv) providing transaction history information, account history information, and/or charge-back information, which can be utilized in order to provide information to a merchant, vendor, or provider, regarding charge-backs, stopping of payments, and/or failures to make payments, which have occurred in an account of an individual or entity; (xvi) providing transaction history information, account history information, and/or charge-back information, which can provide detailed information to a merchant regarding an account transaction or subsequent activities; (xvii) providing transaction history information, account history information, and/or charge-back

information, which can be utilized in order to provide transaction history information, account history information, and/or charge-back information, during a transaction authorization process, prior to an transaction authorization process, subsequent to transaction authorization process, or prior to a goods, products, and/or services, shipment or delivery; (xviii) providing transaction history information, account history information, and/or charge-back information, which can utilize intelligent agents, software agents, or mobile agents; and (xix) providing transaction history information, account history information, and/or charge-back information, which can be programmed to be self-activating or activated automatically. *Id.* at 5:52-7:61. Each of the foregoing represent non-routine and unconventional technological solutions to the deficiencies in the art relating to chargeback and electronic payment fraud; thus, the inventions as claimed capture inventive concepts that transform the inventions into substantially more than the mere practice of electronic payment processing.

36. As noted above, during prosecution of each of the '206 Patent, the '230 Patent, and the '691 Patent, the Primary Patent Examiner specifically considered whether the claims at issue were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*. In each instance, after due consideration, the Primary Patent Examiner expressly found that the claims are in fact patent eligible under 35 USC §101 because: (i) all claims are directed to patent-eligible subject matter; (ii) none of the claims are directed to an abstract idea; (iii) each of the claims contains an inventive concept; and (iv) there is no preemption of any abstract idea or the field of the abstract idea (if any). The Primary Patent Examiner was, in each instance, correct. For these same reasons, all of the claims of the Asserted Patents are patent-eligible.

37. The '698 Patent was examined by Primary United States Patent Examiner Andrew Joseph Rudy. During the examination of the '698 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 705/30; 705/35; and 455/406.

38. After conducting a search for prior art during the examination of the '698 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) US4774664A; (ii) US5010485A; (iii) US5892900A; (iv) US5920847A; (v) US6047270A; (vi) US6115690A; (viii) US6128602A; (ix) US6230145B1; (x) US6283761B1; (xi) US6381587B1; (xii) US6408284B1; (xiii) US6449599B1; (xiv) US6606602B1; (xv) US6754640B2; (xvi) US6837789B2; (xvii) US6856970B1; (xviii) US6879965B2; (xix) US7039389B2; (xx) US7096003B2; (xxi) US7236950B2; (xxii) US5691524A; (xxiii) US5237159A; (xxiv) US5826241A; (xxv) US5783808A; (xxvi) US20030040962A1; (xxvii) US6370521B1; (xxviii) US6341270B1; (xxix) US6473794B1; (xxx) US7249055B1; (xxxi) US7962407B2; (xxxii) US7962408B2; (xxxiii) US8458086B2; (xxxiv) US7877325B2; (xxxv) US7996307B2; (xxxvi) US7979349B2; (xxxvii) US7962406B2; (xxxviii) US7716077B1; (xxxix) US7130807B1; (xl) US6671818B1; (xli) US8032409B1; (xlii) US6763334B1; (xliii) US7865414B2; (xliv) AU4347301A; (xlv) JP2001256318A; (xlvi) US7529698B2; (xlvii) US8428332B1; (xlviii) US20040167863A1; (xlix) GB2466676A; and (l) US8437528B1.

39. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '698 Patent to issue. In so doing, it is presumed that Examiner Rudy used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Rudy has experience in the field of the invention, and that the Examiner properly acted

in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '698 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '698 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Rudy.

40. The '698 Patent is a pioneering patent, and has been cited as relevant prior art in over 275 subsequent United States Patent Applications, including Applications Assigned to such payment processing technology leaders as Novell, Experian, PNC Group, First Data, Visa, American Express, Capital One, Fiserv, LexisNexis Risk Solutions, Palantir, Square, and MasterCard.

41. The '585 Patent was examined by Primary United States Patent Examiner Andrew Joseph Rudy. During the examination of the '585 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 235/376, 705/30, 35.

42. After conducting a search for prior art during the examination of the '585 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) US5532464A; (ii) US5691524A; (iii) US5783808A; (iv) US6230145B1; (v) US7529698B2; (vi) US4774664A; (vii) US5010485A; (viii) US6283761B1; (ix) US5465206B1; (x) US5920847A; (xi) US5826241A; (xii) US5715314A; (xiii) US7096003B2; (xiv) US5903830A; (xv) US5892900A; (xvi) WO1998044442A1; (xvii) US20030040962A1; (xviii) US6128602A; (xix) US6115690A; (xx) US6606602B1; (xxi) US6370521B1; (xxii) US7236950B2; (xxiii) US6341270B1; (xxiv) US6473794B1; (xxv) US7249055B1; (xxvi) US7962407B2; (xxvii) US7962408B2; (xxviii) US8458086B2; (xxix) US7877325B2; (xxx)

US7996307B2; (xxxi) US7979349B2; (xxxii) US7962406B2; (xxxiii) US7716077B1; (xxxiv) US7130807B1; (xxxv) US6671818B1; (xxxvi) US8032409B1; (xxxvii) US6763334B1; (xxxviii) US6535726B1; (xxxix) US7865414B2; (xl) TW550477B; (xli) AU4347301A; (xlii) JP2001256318A; (xliii) AU5323101A; (xliv) US6856970B1; (xlv) US6754640B2; (xlvi) US8428332B1; (xlvii) US20040167863A1; (xlviii) GB2466676A; and (xlix) US8437528B1.

43. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '585 Patent to issue. In so doing, it is presumed that Examiner Rudy used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Rudy has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '585 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '585 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Rudy.

44. The '585 Patent is a pioneering patent, and has been cited as relevant prior art in over 275 subsequent United States Patent Applications, including Applications Assigned to such payment processing technology leaders as Novell, PNC Group, LexisNexis Risk Solutions, American Express, First Data, Experian, Visa, Capital One, Palantir, Fiserv, Square, and MasterCard.

45.     The '206 Patent was examined by Primary United States Patent Examiner Andrew Joseph Rudy. During the examination of the '206 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 235/376, 383, 385, 379, 380, 375, 705/30, 35, 28, 34, 1.1, 37, 38, 39, 705/330, 44, 709/217, 223, 229, 204, 224.

46.     After conducting a search for prior art during the examination of the '206 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) US6185576B1; (ii) US6230145B1; (iii) US7529698B2; (iv) US7599853B2; (v) US8024238B2; (vi) US8069256B2; (vii) US8170928B2; (viii) US8204824B2; (ix) US8437528B1; (x) US8458086B2; (xi) US8655046B1; and (xii) US8706577B2.

47.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '206 Patent to issue. In so doing, it is presumed that Examiner Rudy used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Rudy has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '206 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '206 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Rudy.

48. The '206 Patent is a foundational patent, having been cited as relevant prior art to inventions patented by Bank of America.

49. The '230 Patent was examined by Primary United States Patent Examiner Andrew Joseph Rudy. During the examination of the '230 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 235/376, 379, 380, 383, 375, 455/406, 455/414.1, 705/30, 35, 37, 38, 39, 44, 80, 705/7.12, 7.35, 1.1, 36, 330, 204, 217, 223, 705/224.

50. After conducting a search for prior art during the examination of the '230 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) US5826241A; (ii) US5878337A; (iii) US6230145B1; (iv) US6341270B1; (v) US6370521B1; (vi) US6473794B1; (vii) US6671818B1; (viii) US7096003B2; (ix) US7130807B1; (x) US7184986B2; (xi) US7249055B1; (xii) US7599853B2; (xiii) US7627531B2; (xiv) US7661585B2; (xv) US7716077B1; (xvi) US7840437B2; (xvii) US7865414B2; (xviii) US7877325B2; (xix) US7962407B2; (xx) US7962406B2; (xxi) US7962408B2; (xxii) US7979349B2; (xxiii) US7996307B2; (xxiv) US8032409B1; (xxv) US8170928B2; (xxvi) US8437528B1; (xxvii) US8458086B2; (xxviii) US8655046B1; (xxix) US8706577B2; (xxx) US4774664A; (xxxi) US5010485A; (xxxii) US5691524A; (xxxiii) US5237159A; (xxxiv) US6283761B1; (xxxv) US5465206B1; (xxxvi) US5920847A; (xxxvii) US5715314A; (xxxviii) US5783808A; (xxxix) US5892900A; (xl) WO1998044442A1; (xli) US6128602A; (xlii) US6115690A; (xliii) US6606602B1; (xliv) US7236950B2; (xlv) US6535726B1; (xlvi) TW550477B; (xlvii) AU5323101A; (xlviii) US6856970B1; and (xlix) US6754640B2.

51. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '230 Patent to issue. In so doing, it is presumed

that Examiner Rudy used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Rudy has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '230 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '230 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Rudy.

52. The '230 Patent is a pioneering patent, and has been cited as relevant prior art in over 275 subsequent United States Patent Applications, including Applications Assigned to such payment processing technology leaders as American Express, PNC Financial Group, First Data, Experian, American Express, Capital One, Visa, Fiserv, Palantir, LexisNexis Risk Solutions, Square, and MasterCard.

53. The '691 Patent was examined by Primary United States Patent Examiner Andrew Joseph Rudy. During the examination of the '691 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 705/30, 35, 28, 34, 44, 26.1, 235/376, 235/379, 380, 383, 385, 709/217, 223, 709/229, 204.

54. After conducting a search for prior art during the examination of the '691 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) US6185576B1; (ii) US7529698B2; (iii) US7599853B2; (iv) US8024238B2;

(v) US8069256B2; (vi) US8170928B2; (vii) US8204824B2; (viii) US8428332B1; (ix) US8437528B1; (x) US8706577B2; and (xi) US8944234B1.

55.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '691 Patent to issue.  In so doing, it is presumed that Examiner Rudy used his knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Rudy has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).  In view of the foregoing, the claims of the '691 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art.  Likewise, the claims of the '691 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Rudy.

56.     The '691 Patent is a pioneering patent, and has been cited as relevant prior art in over 20 subsequent United States Patent Applications, including Applications Assigned to such payment processing technology leaders as Moda Solutions, Bank of America, Western Union, MoneyGram, and MasterCard.

57.     The claims of the Asserted Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired

patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

58. The expiration dates of the Caselas Patents are at least the following: the '698 Patent expires no earlier than November 5, 2024; the '585 Patent expired on March 19, 2018 due to nonpayment of maintenance fees; the '206 Patent expired on September 30, 2019 due to nonpayment of maintenance fees; the '230 Patent expired on September 30, 2019 due to nonpayment of maintenance fees; and the '691 Patent expires no earlier than August 29, 2022.

## THE ACCUSED INSTRUMENTALITIES

59. Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the electronic payment processing services and/or merchant account services provided by EMS comprise a nationwide network of servers, hardware, software (including software-as-a-service, or SaaS), and a collection of related and/or linked web pages and electronic communications interfaces and channels for performing electronic payment processing and authorization. On information and belief, the EMS system comprises an apparatus with multiple interconnected infrastructures that infringe the Asserted Patents. On information and belief, the EMS system comprises receivers, processing devices, and transmitters which collectively operate to interact with merchants, payment gateways, and card networks to process and authorize (or decline) electronic payment transactions throughout the United States. On information and belief, the electronic payment processing services and/or merchant account services offered by EMS are marketed as MaxxPay,

Altus, and Payment Gateway, among others.  Collectively, all of the foregoing comprises the "Accused Instrumentalities."



*See https://www.emscorporate.com/.*



*See https://www.emscorporate.com/maxx-pay/.*

60.     On information and belief, the Accused Instrumentalities perform a number of critical functions in the overall electronic payment paradigm, including but not limited to: interfacing with payment gateways to receive information regarding transactions, interfacing with card networks and merchants to facilitate processing and transaction authorization, interfacing with acquiring banks and issuing banks, applying transaction security measures, and safeguarding against fraud. *See, e.g.,* https://chargebacks911.com/knowledge-base/guidelines-for-internet-processing/; *see also:* https://en.wikipedia.org/wiki/Payment_processor; *and* https://blog.2checkout.com/how-does-the-payment-processing-industry-work/.

61.     On information and belief, EMS conforms to the 2008 Guidance on Payment Processor Relationships, which was issued by the Federal Deposit Insurance Corporation (FDIC), and which pertains, in part, to Risk Control measures. On information and belief, adherence to such Guidance on the part of EMS is embodied in the Accused Instrumentalities.

62.     On information and belief, EMS conforms to the Payment Card Industry Data Security Standards (or PCI DSS), which were promulgated beginning in 2006.  On information and belief, adherence to such Standard on the part of EMS is embodied in the Accused Instrumentalities.

63.     On information and belief, EMS subscribes to, and utilizes as part of the Accused Instrumentalities and its provision of electronic payment processing and/or merchant services to customers, one or both of Ethoca Alerts (offered by Ethoca, Inc.) and/or Verifi Alerts (a Visa product).  *See, e.g.,* https://usa.visa.com/dam/VCOM/global/support-legal/documents/card-acceptance-guidelines-visa-merchants.pdf; *see also:* https://www.chargebackgurus.com/blog/what-you-need-to-know-about-ethoca-chargeback-alerts; *and* https://www.ethoca.com/ethoca-alerts-for-merchants.

64.     On information and belief, the Accused Instrumentalities generate, maintain, store, and/or utilize, certain data concerning financial accounts, financial account holders, and/or account holder transactional information.  On information and belief, among such data is data relating to historical chargeback events and/or historical transactions associated with either the individual account holder and/or the account.  On information and belief, such data comprises all or part of "Account Profile Data" for a given account and/or account holder, and is generated, maintained, stored, and/or utilized by the Accused Instrumentalities to develop, *inter alia*, Risk Indicators and the like. Further, or in the alternative, the Accused Instrumentalities are provided Account Profile Data (including but not limited to data relating to historical chargeback events and/or historical transactions associated with either the individual account holder and/or the account) during processing from one or more of a Card Network, an Issuing Bank, and/or an Acquiring Bank  *See, e.g.,* U.S. Patent No. 10,504,122 to MasterCard International; *see also* U.S. Patent No. 8,857,710 to Intuit, Inc.; *see also* U.S. Patent No. 8,600,855 to Visa International.  On information and belief,

the foregoing data is integral to the algorithms utilized by the Accused Instrumentalities to carry out electronic payment processing and authorizations.



See *https://www.emscorporate.com/news/tag/fraud-protection*.



See *https://www.emscorporate.com/news/what-you-need-to-know-about-chargebacks*.



## Choose the Right Payment Processor

It's sad, really, to think that there are customers who may come to your business intending to steal from you.

We're not here to discourage you, because for every backwards Robin Hood that walks up to your counter, there are many customers who genuinely want to purchase the products or services you offer. However, if your business accepts credit cards, friendly fraud is an unfortunate reality.

That's why it's important to have a trustworthy partner by your side.

Electronic Merchant Systems is a leading provider of payment processing and merchant services, servicing tens of thousands of retail, internet, and start-up businesses across the nation.

We take the time to get to know your business before recommending the best, most secure payment processing solution for you. Our countertop terminals and POS systems are equipped to accept EMV chip cards, checks, EMV, EBT, gift cards, and loyalty cards. We are also a Level One PCI Compliant company, so you can rest assured that your data is always safe with us.

If you want to avoid chargebacks and are interested in partnering with a payment processor who has your best interests in mind, contact us today!

**CONTACT EMS NOW**

*See https://www.emscorporate.com/news/what-you-need-to-know-about-chargebacks.*

### COUNT I
### Infringement of U.S. Patent No. 7,529,698

65.     Plaintiff incorporates the above paragraphs by reference.

66.     Defendant has been on actual notice of the '698 Patent at least as early as the date it received service of this Original Complaint.

67.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

68.     Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 20 of the '698 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

69.     The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in

the United States. On information and belief, the infringing apparatus comprises a nationwide network of servers, hardware, software, and a collection of related and/or linked web pages and electronic communications interfaces and channels for performing electronic payment processing and authorization. On information and belief, the Accused Instrumentalities comprise a receiver for receiving information regarding a transaction involving an account, wherein the information regarding the transaction is received by the receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction. More specifically, the Accused Instrumentalities are configured such that information regarding specific individual transactions (such as, for example, Point-of-Sale Credit/Debit Transactions or Online Electronic Transactions) is delivered (via, for example, the Internet, via a dial-up connection from a merchant, or via a Payment Gateway such as are provided by FIS, Ingenico, Square, or PayPal) to the apparatus of the Accused Instrumentalities. On information and belief, such information comprises merchant information, transaction details (such as amount), and payment account information (such as account number, CVV/CVC/CID/BIN, and/or account holder identity). Such information is received at the Accused Instrumentality prior to processing, completing, consummating, and/or cancelling, the subject transaction.

70. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises a processing device embodied in the hardware and software of the Accused Instrumentalities, which processes the information as received using information regarding the associated account. On information and belief, the information regarding the account includes, among other things, historical account details and historical chargeback data associated with the account and/or account holder.

71.     The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises servers and associated hardware and software, including software offered as a service (SaaS), which is configured to execute certain fraud prevention measures employed by EMS and embodied in the Accused Instrumentalities. More particularly, the Accused Instrumentalities are configured to determine whether or not the subject transaction is authorized and, in turn, to transmit a message concerning such authorization to the merchant, including via a Payment Gateway. On information and belief, such message is at least partially dependent upon the satisfaction or non-satisfaction of prior chargeback event thresholds, and therefore embodies and contains such information.

72.     The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff. The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '698 Patent.

73.     To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '698 Patent, such infringement is necessarily willful and deliberate.

74.     To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '698 Patent, such infringement is necessarily willful and deliberate.

75.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others. Further on information and belief, Defendant instructs its employees to not review the

patents of others for clearance or to assess infringement thereof. As such, Defendant has been willfully blind to the patent rights of Plaintiff.

76. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT II
### Infringement of U.S. Patent No. 7,661,585

77. Plaintiff incorporates the above paragraphs by reference.

78. Defendant has been on actual notice of the '585 Patent at least as early as the date it received service of this Original Complaint.

79. Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

80. Upon information and belief, Defendant has directly infringed at least Claim 21 of the '585 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

81. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises a nationwide network of servers, hardware, software, and a collection of related and/or linked web pages and electronic communications interfaces and channels for performing electronic payment processing and authorization. On information and belief, the Accused Instrumentalities comprise a receiver for receiving information regarding a transaction involving an account, wherein the information regarding the transaction is received by the receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction. More specifically, the Accused Instrumentalities are configured such that information regarding specific individual transactions (such as, for example, Point-of-Sale Credit/Debit Transactions or Online Electronic Transactions) is delivered (via, for example, the Internet, via a dial-up connection from a merchant, or via a

Payment Gateway such as are provided by FIS, Ingenico, Square, or PayPal) to the apparatus of the Accused Instrumentalities. On information and belief, such information comprises merchant information, transaction details (such as amount), and payment account information (such as account number, CVV/CVC/CID/BIN, and/or account holder identity). Such information is received at the Accused Instrumentality prior to processing, completing, consummating, and/or cancelling, the subject transaction.

82. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises a processing device embodied in the hardware and software of the Accused Instrumentalities, which processes the information as received using information regarding the associated account. On information and belief, the information regarding the account includes, among other things, historical account details and historical chargeback data associated with the account and/or account holder.

83. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises servers and associated hardware and software, including software offered as a service (SaaS), which is configured to execute certain fraud prevention measures employed by EMS and embodied in the Accused Instrumentalities. More particularly, the Accused Instrumentalities are configured to determine whether or not the subject transaction is authorized and, in turn, to transmit a message concerning such authorization to the merchant, including via a Payment Gateway. On information and belief, such message is at least partially dependent upon the satisfaction or non-satisfaction of prior chargeback event thresholds, and therefore embodies and contains such information.

84. The foregoing infringement on the part of Defendant has caused past injury to Plaintiff. The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '585 Patent.

85. On information and belief, Defendant has a policy or practice of not reviewing the patents of others. Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Defendant has been willfully blind to the patent rights of Plaintiff.

86. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

### COUNT III
### Infringement of U.S. Patent No. 9,117,206

87. Plaintiff incorporates the above paragraphs by reference.

88. Defendant has been on actual notice of the '206 Patent at least as early as the date it received service of this Original Complaint.

89. Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

90. Upon information and belief, Defendant has directly infringed at least Claim 13 of the '206 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

91. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises a nationwide network of servers, hardware, software, and a collection of related and/or linked web pages and electronic communications interfaces and channels for performing electronic payment processing and authorization. On information and belief, the Accused Instrumentalities comprise a processing

device embodied in the hardware and software of the Accused Instrumentalities, which processes information as received from merchants and/or Payment Gateways. On information and belief, the information as received comprises, *inter alia*, information regarding an individual involved in a given proposed transaction (such as, for example, historical transaction details associated with such individual, historical chargeback data associated with the individual, the individual's name, the individual's zip code, geolocation information associated with the individual, the individual's account number, and/or a unique personal identifier associated with the individual, such as a PIN number).

92.     The Accused Instrumentalities further comprise servers and associated hardware and software, including software offered as a service (SaaS), which is configured to execute certain fraud prevention measures employed by EMS and embodied in the Accused Instrumentalities. More particularly, the Accused Instrumentalities are configured to determine whether or not the subject transaction is authorized and, in turn, to transmit a message concerning such authorization to the merchant, including via a Payment Gateway. On information and belief, such message is at least partially dependent upon the satisfaction or non-satisfaction of certain event thresholds and criteria, including but not limited to thresholds and criteria associated with the prior transaction history of the individual involved in the pending transaction, and therefore embodies and contains such information.

93.     The foregoing infringement on the part of Defendant has caused past injury to Plaintiff. The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '206 Patent.

94. On information and belief, Defendant has a policy or practice of not reviewing the patents of others. Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Defendant has been willfully blind to the patent rights of Plaintiff.

95. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT IV**
**Infringement of U.S. Patent No. 9,117,230**

96. Plaintiff incorporates the above paragraphs by reference.

97. Defendant has been on actual notice of the '230 Patent at least as early as the date it received service of this Original Complaint.

98. Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

99. Upon information and belief, Defendant has directly infringed at least Claim 31 of the '230 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

100. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises a nationwide network of servers, hardware, software, and a collection of related and/or linked web pages and electronic communications interfaces and channels for performing electronic payment processing and authorization. On information and belief, the Accused Instrumentalities comprise a processing device embodied in the hardware and software of the Accused Instrumentalities, which processes information as received from merchants and/or Payment Gateways concerning specific individual transactions involving specific associated accounts. More specifically, the Accused Instrumentalities are configured such that information regarding specific individual transactions

(such as, for example, Point-of-Sale Credit/Debit Transactions or Online Electronic Transactions) is delivered (via, for example, the Internet, via a dial-up connection from a merchant, or via a Payment Gateway such as are provided by FIS, Ingenico, Square, or PayPal) to the apparatus of the Accused Instrumentalities. On information and belief, such information comprises merchant information, transaction details (such as amount), and payment account information (such as account number, CVV/CVC/CID/BIN, and/or account holder identity). Such information is received at the Accused Instrumentality prior to processing, completing, consummating, and/or cancelling, the subject transaction.

101. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises servers and associated hardware and software, including software offered as a service (SaaS), which is configured to execute certain fraud prevention measures employed by EMS and embodied in the Accused Instrumentalities. More particularly, the Accused Instrumentalities are configured to determine whether or not the subject transaction is authorized and, in turn, to transmit a message concerning such authorization to the merchant, including via a Payment Gateway. On information and belief, such message is at least partially dependent upon the satisfaction or non-satisfaction of prior chargeback event thresholds, and therefore embodies and contains such information.

102. The foregoing infringement on the part of Defendant has caused past injury to Plaintiff. The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '230 Patent.

103. On information and belief, Defendant has a policy or practice of not reviewing the patents of others. Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Defendant has been willfully blind to the patent rights of Plaintiff.

104. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT V**
**Infringement of U.S. Patent No. 9,715,691**

105. Plaintiff incorporates the above paragraphs by reference.

106. Defendant has been on actual notice of the '691 Patent at least as early as the date it received service of this Original Complaint.

107. Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

108. Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 1 of the '691 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

109. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises a nationwide network of servers, hardware, software, and a collection of related and/or linked web pages and electronic communications interfaces and channels for performing electronic payment processing and authorization. On information and belief, the Accused Instrumentalities comprise a receiver for receiving information regarding an account involved in a transaction involving an individual, wherein the information regarding the account and the transaction is received by the receiver prior to a processing, a completion, a consummation, or a cancellation, of the transaction. More

specifically, the Accused Instrumentalities are configured such that information regarding specific individual transactions (such as, for example, Point-of-Sale Credit/Debit Transactions or Online Electronic Transactions) is delivered (via, for example, the Internet, via a dial-up connection from a merchant, or via a Payment Gateway such as are provided by FIS, Ingenico, Square, or PayPal) to the apparatus of the Accused Instrumentalities. On information and belief, such information comprises merchant information, transaction details (such as amount), and payment account information (such as account number, CVV/CVC/CID/BIN, and/or account holder identity). Such information is received at the Accused Instrumentality prior to processing, completing, consummating, and/or cancelling, the subject transaction.

110. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises a processing device embodied in the hardware and software of the Accused Instrumentalities, which processes the information as received using information regarding the associated account involved in the transaction involving an individual account holder. On information and belief, the information regarding the account includes, among other things, historical account details and historical chargeback data associated with the account and/or account holder.

111. The Accused Instrumentalities comprise an apparatus for providing electronic payment processing services and/or merchant account services to and for the benefit of merchants and consumers in the United States. On information and belief, the infringing apparatus comprises servers and associated hardware and software, including software offered as a service (SaaS), which is configured to execute certain fraud prevention measures employed by EMS and embodied in the Accused Instrumentalities. More particularly, the Accused Instrumentalities are configured to

determine whether or not the subject transaction is authorized and, in turn, to transmit a message concerning such authorization to the merchant, including via a Payment Gateway. On information and belief, such message is at least partially dependent upon the satisfaction or non-satisfaction of prior chargeback event thresholds, and therefore embodies and contains such information.

112. The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff. The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '691 Patent.

113. To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '691 Patent, such infringement is necessarily willful and deliberate.

114. To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '691 Patent, such infringement is necessarily willful and deliberate.

115. On information and belief, Defendant has a policy or practice of not reviewing the patents of others. Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Defendant has been willfully blind to the patent rights of Plaintiff.

116. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Caselas, LLC respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has infringed each of the Asserted Patents;

2.	Awarding Caselas, LLC its damages suffered because of Defendant's infringement of the Asserted Patents;

3.	Awarding Caselas, LLC its costs, reasonable attorneys' fees, expenses, and interest;

4.	Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the Asserted Patents;

5.	Awarding Caselas, LLC ongoing post-trial royalties for infringement of the non-expired Asserted Patents; and

6.	Granting Caselas, LLC such further relief as the Court finds appropriate.

## JURY DEMAND

Caselas, LLC demands trial by jury, under Fed. R. Civ. P. 38.


Dated:  December 11, 2020

Respectfully Submitted

*/s/ M. Scott Fuller*
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com
Randall Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Thomas Fasone III
Texas Bar No. 00785382
tfasone@ghiplaw.com
René Vazquez
*Pro Hac Vice Anticipated*

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

**ATTORNEYS FOR PLAINTIFF**
**CASELAS, LLC**